

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED
THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed August 12, 2016

_____
**United States Bankruptcy Judge**
_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| **Dereck Sam Ross,** | § § | Case No. 15-31269-hdh7 |
| Debtor. | § § § | |
| **NextGear Capital, Inc.,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | Adv. Proc. No. 15-03079 |
| **Dereck Sam Ross,** | § § § | |
| Defendant. | § § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Plaintiff seeks a finding that certain debts owed to it by debtor Dereck Sam Ross (the "Defendant") are nondischargeable. The Defendant was a member of a used car dealership (the "Dealership") that obtained financing from the Plaintiff. The Defendant executed a guaranty of

1

the Dealership's obligations to the Plaintiff. The Plaintiff alleges that the Dealership sold as many as twenty-two vehicles and received payment from customers but failed either to pay the Plaintiff or to hold the proceeds in trust for the Plaintiff, as the Dealership was contractually required to do. The Plaintiff also alleges that the Defendant, on behalf of the Dealership, initiated an Automated Clearing House payment (the "ACH Payment") to the Plaintiff to induce the Plaintiff to release the certificates of title for twelve vehicles knowing that there were not sufficient funds in the Dealership's account to cover the ACH Payment and then filed for bankruptcy the next day. The Plaintiff seeks a determination that its claim against the Defendant is nondischargeable pursuant to Bankruptcy Code sections 523(a)(4), 523(a)(2)(A), and 523(a)(6).

The Court held trial on March 8, 2016, but this case presented some unusual procedural challenges that made it very difficult for the Court to reach the merits. Before reaching the actual facts and conclusions relevant to this adversary proceeding, the Court will first address the issues regarding deemed admissions and the sufficiency of the Plaintiff's complaint that arose at trial.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The matters in this adversary proceeding are core matters under 28 U.S.C. § 157(b)(2)(A) and (I), as the adversary proceeding involves a determination as to the dischargeability of a particular debt. Venue for this adversary proceeding is proper pursuant to 28 U.S.C. § 1409(a).

## DEEMED ADMISSIONS

The following section of these Findings and Conclusions regarding deemed admissions is provided as background and explanation for the benefit of the parties and any reviewing court. At trial, the Court ruled that the Defendant's failure to timely answer the Plaintiff's requests for

admission resulted in those matters being deemed admitted (the "Deemed Admissions")[1] and denied an oral motion by the Defendant to withdraw those Deemed Admissions.

The Defendant originally moved to strike the Plaintiff's discovery requests as untimely[2] because they were not served at least thirty days before—and therefore were not answerable before—the Court's Scheduling Order required that discovery be completed.[3] The Scheduling Order required that discovery be completed forty-five days before the Docket Call, which was originally scheduled for November 23, 2015. When the Docket Call was moved to January 25, 2016 by agreement of the parties, however, the deadline for discovery to be completed was also extended[4] and the basis for the Motion to Strike was essentially mooted.

At the hearing on the Motion to Strike on December 17, 2015, the Defendant withdrew the Motion to Strike because of the rescheduling of the Docket Call and suggested that the Court set an answer date for the pending discovery propounded by the Plaintiff. Specifically, counsel for the Defendant suggested the Defendant be required to answer the pending discovery by January 8, 2016. The Court agreed and at the hearing on December 17, 2015—with counsel for both the Plaintiff and the Defendant present—ordered on the record that the Defendant's answer deadline for the outstanding discovery requests was January 8, 2016. Neither party was instructed to upload a written order for the Court to sign.[5]

---

[1] The specific requests for admissions that were deemed admitted are available in Plaintiff's Exhibit 8.

[2] *See* Motion to Strike Untimely Discovery [Docket No. 9] (the "Motion to Strike").

[3] *See* Order Regarding Adversary Proceedings Trial Setting and Alternative Scheduling Order [Docket No. 3].

[4] *See* Scheduling Order at Part III, ¶ 7 ("If the case is reset, all the deadlines in Part III nos. 1 through 5 will be shifted to the newly scheduled Docket Call date in the absence of a contrary Court order.").

[5] On January 8, 2016, the Clerk of Court sent correspondence to counsel for the Defendant requesting that they upload an order on their Motion to Strike, which was the only motion before the Court on December 17, 2015. *See* Docket No. 26.

At a hearing on January 19, 2016 regarding an unrelated discovery matter, counsel for the Plaintiff brought it to the Court's attention that a written order had not been entered regarding the Motion to Strike and the January 8 deadline, and the Court asked counsel for the Plaintiff to upload such an order, which they did shortly thereafter. A written order memorializing the Court's oral order was entered on January 21, 2016.[6]

In the *First Amended Joint Pretrial Order* [Docket No. 45] entered on March 2, 2016 (the "Final Pretrial Order"), the Plaintiff alleged that the Defendant did not provide any written responses to any portion of the Plaintiff's discovery until January 25, 2016 when the Defendant served its responses to requests for admissions. The Plaintiff further alleged that the Defendant did not request or obtain an extension of the January 8, 2016 deadline to respond to discovery. Accordingly, the Plaintiff requested that its requests for admission be deemed admitted pursuant to Rule 36(a)(3) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7036.

It is notable that the original version of the pretrial order was entered on February 22, 2016.[7] The Plaintiff amended the pretrial order and stated in the attached certificate of conference that they sent a copy of the amended version to counsel for the Defendant but received no response. As a result, the Defendant's positions in the Final Pretrial Order were the same as in the original version and did not address the Plaintiff's request for deemed admissions. The Defendant did not file a further amendment to the Final Pretrial Order, did not file any briefing prior to the trial regarding the issue of the Plaintiff's request for deemed admissions, and did not file a motion to

---

[6] *Order Regarding Defendant's Motion to Strike Untimely Discovery* [Docket No. 30].

[7] Docket No. 38.

withdraw or amend its admissions. In reliance on the request for deemed admissions, counsel for the Plaintiff appeared at trial without witnesses and prepared to rest on those admissions.

At trial, counsel for the Defendant essentially argued that the Court's oral pronouncement in open court on December 17, 2015 was not effective until a written order was entered on January 21, 2016. The Court was not presented with any authority to support the proposition that an oral order is not effective until it is reduced to writing.[8] Many Courts have found oral orders in bankruptcy proceedings to be effective immediately when the parties had notice of the oral order and it was important that the order take effect immediately. *See Best Payphones, Inc. v. Manhattan Telecomms. Corp. (In re Best Payphones, Inc.)*, 432 B.R. 46, 60 n.12 (S.D.N.Y. 2010) (collecting cases); *see also Ingalls v. Thompson (In re Bradley)*, 588 F.3d 254 (5th Cir. 2009) (finding conduct contemptuous for failure to comply with an oral injunction that was not yet reduced to writing). In this case, it was important that the ruling take effect immediately, and all parties were aware of the ruling. The Defendant not only agreed to the deadline imposed by the Court but suggested it.

Federal Rule of Civil Procedure 36(a)(3) states that a matter is admitted unless, within thirty days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be ordered by the Court. In this case, a longer time period was ordered by the Court. Despite being served in September of 2015, the Court ordered an answer deadline of January 8, 2016. The Defendant did not answer until January 25, 2016, so the matters at issue were deemed admitted.

---

[8] The Defendant did refer the Court to Federal Rule of Civil Procedure 58(a) and (c), but that Rule applies to the entry of judgments.

Counsel for the Defendant also made the argument at trial that even if the responses to the requests for admission were tardy, the Court should exercise discretion to allow withdrawal of the Deemed Admissions. The Fifth Circuit has stressed that a deemed admission can only be withdrawn or amended by motion in accordance with Rule 36(b). *Carney v. IRS (In re Carney)*, 258 F.3d 415, 419 (5th Cir. 2001). In order to allow withdrawal of a deemed admission, Rule 36(b) requires that a trial court find that withdrawal or amendment: 1) would serve the presentation of the case on its merits, but 2) would not prejudice the party that obtained the admissions in its presentation of the case. *Id.*

The withdrawal of the Deemed Admissions clearly would have served the presentation of the case on its merits, so the question for the Court was whether the withdrawal would prejudice the Plaintiff. Counsel for the Defendant contended that the Plaintiff did not, and would not, suffer prejudice because the Plaintiff knew most of the matters would be denied, the Defendant did answer within a reasonable amount of time after the written order was entered, the delay in the written order being entered was caused by the Plaintiff, and the Defendant agreed to postpone trial if necessary. The Court disagrees. As represented by the Plaintiff at trial, but for their reliance on the Deemed Admissions, they would have brought at least one witness to trial, and they would have attempted to conduct additional discovery, including depositions. The Court believes the Plaintiff's trial preparation would have been different. If the Defendant wished to withdraw the Deemed Admissions without prejudicing the Plaintiff, the time to file a motion to do that was either when a written order was entered with a deadline that the Defendant had already missed or, at the very latest, when the Final Pretrial Order was entered making it clear that this was an issue. Allowing the Defendant to show up at trial and withdraw the Deemed Admissions based on an

oral motion would have prejudiced the Plaintiff in its presentation of the case, and accordingly, the oral motion to withdraw the Deemed Admissions was denied.

## THE PRETRIAL ORDER

At trial, the Defendant made an oral motion for judgment based on the argument that any cause of action pled in a complaint but not contained in a pretrial order is waived because a pretrial order supersedes all pleadings in the case and the Final Pretrial Order in this case does not state any claim, makes no request for relief, and does not articulate any causes of action. The Court denied the oral motion but permitted post-trial briefing, in which the Defendant briefed this issue and re-urged its motion. The Court will now reconsider its ruling with regard to the alleged defects in the Final Pretrial Order.

The Plaintiff's complaint contains only three counts.[9] Each of the counts seeks the same relief: a finding that some portion of the debt that the Defendant owes to the Plaintiff is nondischargeable. Each of the three counts contains a different statutory basis for obtaining this relief: Bankruptcy Code sections 523(a)(2)(A), 523(a)(4), and 523(a)(6).

The Defendant is correct that it is a well-settled rule that a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial. *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998). The Defendant is also correct that the Final Pretrial Order (1) does not ask for any relief, (2) does not contain a single cause of action, (3) does not use the words "discharge" or "dischargeability" in reference to the Plaintiff's claims, and (4) makes no reference to section 523 of the Bankruptcy Code. The Final Pretrial Order recites the facts from the Complaint, but it leaves out the causes of action. The

---

[9] *See Complaint Objecting to Dischargeability of a Debt* [Docket No. 1] (the "Complaint").

Court agrees with the Defendant that the Final Pretrial Order is plainly deficient. The question then becomes whether the Court should permit an amendment of the Final Pretrial Order pursuant to Federal Rule of Civil Procedure 16(e).

Courts have "broad discretion in determining whether or not a pretrial order should be modified or amended." *United States v. Texas*, 680 F.2d 356, 370 (5th Cir. 1982). Federal Rule of Civil Procedure 16(e) permits a court to modify a pretrial order in order to prevent "manifest injustice." "It has been suggested that proper treatment of the pre-trial order after entry requires an appropriate balance between firmness to preserve the essential integrity of the order, and adaptability to meet changed or newly discovered conditions or to respond to the special demands of justice." *Central Distributors, Inc. v. M.E.T., Inc.*, 403 F.2d 943, 944 (5th Cir. 1968). The Fifth Circuit has allowed amendments where "no surprise or prejudice to the opposing party results." *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 346 (5th Cir. 2002).

Unlike most situations in which this issue arises, a finding that amendment of the Final Pretrial Order is not allowed will result in the Plaintiff's waiver of its entire lawsuit. The Court believes it is necessary to amend the Final Pretrial Order to include the causes of action asserted in the Complaint in order to prevent manifest injustice. This amendment will not result in surprise or prejudice to the Defendant.

With regard to surprise, there was only one form of relief requested in the entire Complaint. There were three different bases for obtaining that relief, but only one form of relief—nondischargeability. It was clear from the Final Pretrial Order that the Plaintiff did not mean to drop the entire lawsuit. Though not stated therein, it was obvious that the Plaintiff was still seeking a determination of nondischargeability on the same grounds as were stated in the Complaint. Furthermore, the Defendant showed up at trial with a witness and exhibits prepared to make a

complete evidentiary record. The Defendant did, in fact, proceed with trial and make a complete evidentiary record.

With regard to prejudice, the Court notes that the Defendant prepared for trial and then appeared with a witness and presented its evidence. Given that this question would have eliminated the lawsuit in its entirety, it is clear to the Court that the Defendant prepared for trial and presented its case at trial under the assumption that the causes of action in the Complaint were not waived. The Defendant's presentation of its case was not altered by this issue, and the Defendant will not suffer prejudice from the amendment of the Final Pretrial Order.

The Court notes that the Final Pretrial Order is being amended only to include the causes of action alleged in the Complaint. In post-trial briefing, the Plaintiff appeared to ask for relief under a new theory, and the Court will not permit that. Specifically, there are several avenues under which a party may proceed under Bankruptcy Code section 523(a)(4), including (1) fraud or defalcation while acting in a fiduciary capacity, (2) embezzlement, or (3) larceny. In the Complaint, and as implied by the facts included in the Final Pretrial Order, the Plaintiff alleged only "fraud or defalcation while acting in a fiduciary capacity." The Plaintiff attempted to rely on embezzlement for the first time in post-trial briefing.[10] The Court does not regard this as part of the Complaint or the Final Pretrial Order and does not grant leave to include it now.

## FINDINGS OF FACT[11]

The Plaintiff rested its case on the Deemed Admissions and the additional exhibits that it entered into evidence. Before the Defendant began to present evidence, the Court noted on the

---

[10] *See Plaintiff's Response to Defendant's Post Trial Brief* [Docket No. 49].

[11] The following are the Court's Findings of Fact and Conclusions of Law, issued pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable in adversary proceedings, by Federal Rule of Bankruptcy Procedure

record that to the extent the Defendant's evidence deviates from the Deemed Admissions, the Deemed Admissions control.

The Defendant's primary defense is that he was not in control of, or really even involved with, the Dealership's operations at the time of the any of the events in question. The Court is forced to disregard this testimony based on, among others, Deemed Admissions 1, 2, 12, 23, 26, 27, 28, 29, 30, 32, 41, 42, and 43. The Defendant specifically testified that he did not request the ACH Payment at issue in this case, but this testimony is directly contradicted by Deemed Admission 23.

The Defendant also presented evidence regarding an asset that secures the Plaintiff's claim. This evidence was apparently submitted in support of the Defendant's argument that the Court could not find the Plaintiff's present claim against the Defendant nondischargeable because, despite the fact that the obligation is in default and the parties liable for it are not paying, the obligation would likely be paid at some point in the future. The Court is not aware of an exception to the rules of nondischargeability for secured debts. Both parties were offered the opportunity to submit post-trial briefing, and the Defendant chose to address this very argument in that briefing but failed to point the Court to any authority to support this position that because a debt is fully secured, it cannot be found nondischargeable.

## **CONCLUSIONS OF LAW**

The Plaintiff sought relief under sections 523(a)(4), 523(a)(6), and 523(a)(2)(A) of the Bankruptcy Code. In order to obtain relief under section 523(a)(4), the Plaintiff was required to

---

7052. Any Finding of Fact that more properly should be construed as a Conclusion of Law shall be considered as such, and *vice versa*.

10

show that the Defendant owed the Plaintiff a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.  The Plaintiff did not allege embezzlement or larceny, so the Plaintiff was required to show that the Defendant owes the Plaintiff a debt for fraud or defalcation while acting in a fiduciary capacity.  Specifically, the Plaintiff alleges that the Defendant had a fiduciary duty to hold sale proceeds in trust for the benefit of the Plaintiff and to remit those proceeds to the Plaintiff within twenty-four hours of receiving them.  While most facts necessary to this cause of action have been proven through the Deemed Admissions, there is nothing before the Court establishing that the Defendant had a fiduciary duty in this instance.  To the extent anyone had a fiduciary duty, it was the Dealership, not the Defendant.

In order to obtain relief under section 523(a)(6), the Plaintiff was required to show that the Defendant owed the Plaintiff a debt for willful and malicious injury by the debtor to another entity or to the property of another entity.  While not dispositive, the Court is hesitant to find a malicious injury in the context of a breach of contract rather than a tort claim.  The ACH Payment is a more compelling case than the Dealership's broader failure to remit proceeds, but, as noted below, the consequences from that action flow more naturally from section 523(a)(2)(A).  Under the circumstances, the Court does not find the Defendant's actions to have been malicious.

In order to obtain relief under section 523(a)(2)(A), the Plaintiff was required to show that the Defendant owed the Plaintiff a debt for money, property, services, or an extension, renewal, or refinancing of credit, obtained by false pretenses, a false representation, or actual fraud.  The certificates of title constitute "Property" of the Plaintiff within the meaning of section 523(a)(2)(A). The initiation of the ACH Payment by the Defendant along with a representation to the Plaintiff that sufficient funds were available to cover the entire ACH Payment, with the purpose of inducing the release of certificates of title and with knowledge that the ACH Payment would

not be honored, constitutes false pretenses, a false representation, and actual fraud. The Defendant is liable to the Plaintiff for property obtained through false pretenses, a false representation, or actual fraud, and the sum of $73,212.96 is therefore nondischargeable pursuant to section 523(a)(2)(A).

Counsel for the Plaintiff should submit a form judgment to the Court finding that $73,212.96 of the Plaintiff's claim against the Defendant is nondischargeable pursuant to section 523(a)(2)(A).

###End of Findings of Fact and Conclusions of Law###